Good morning Judge Fletcher and Judge Gold and Judge King. My name is Mary Geddes. I am an Assistant Federal Public Defender and it's my privilege to represent Frank Turney of Fairbanks, Alaska, who is tireless, ceaseless in his quest to inform all in Fairbanks, including prospective jurors, of their common law right to vote their conscience. He was convicted for his acts of communicating with three individuals who were involved in a jury selection process. Outside the courthouse, these three individuals who may or may not have been wearing badges, identifying them as jurors or prospective jurors. He was holding his placard and he was saying what he says to everyone going in and out of the courthouse, which is call 1-800-TELL-JUROR. And he often accompanies that information with, if you want to learn about your rights. Now, my understanding is that this is a challenge to the breadth of the statute. That's correct, Your Honor. Then what he individually did in this case. That's correct. Is an example of perhaps your claim of overbreadth. Yes, Your Honor. The issue presented here is limited to the issue of overbreadth. And basically the reason it is overbroad is because it reaches any speech or any communication intended to influence jurors in their actions as jurors. That is essentially the language of the Alaska statute that's at issue here. As to the outcome of the particular case, is that not right? That's how it's been interpreted by the Alaska Supreme Court, yes. I think we look at that narrowed interpretation, do we not? You do look at that narrowed interpretation. However, in the opinion of Judge Mannheimer of the Alaska Court of Appeals and certainly Mr. Turney, even that construction is not sufficient to save the statute from overbreadth. Judge Mannheimer was the dissenting justice, right? He was, Your Honor. And of course, Mr. Turney has relied heavily upon his reasoning in his habeas action and on appeal. Essentially, Judge Mannheimer has said that the statute, in order not to be or such a sanction, a criminal sanction, in order not to suffer from overbreadth, must, does infringe free speech if, unless, excuse me, unless advocacy, the advocacy involved or the communication involved was intended to incite or produce imminent unlawful conduct and that the speech was likely to achieve this result. But such a construction has not been given it, nor does, is there specific language in the statute that requires this additional proof. It is an objectively unreasonable application of what is clearly established Federal law and not to have the specific requirement. The cases that Mr. Turney relies upon are the Supreme Court holdings and Brandenburg landmark communications and Gentile, which are all discussed within Mr. Turney's brief. How do you assess the, is it the Cox case? The Cox case. Cox was essentially a time, place and manner kind of determination made by the United States Supreme Court. It involved individuals who were picketing, and the prohibition or the ordinance involved there was essentially a prohibition against picketing. And it talked about how such activity could impinge upon the defendant's right to a fair trial, and that was why it was reasonable to specifically prohibit such communications close to a courthouse, or in or near a courthouse, I believe is the language of the ordinance. But if this, if the Supreme Court has upheld the prosecution of picketing against an over, I think against an overbreadth challenge, then does it follow that the Supreme Court law doesn't, wouldn't condemn a prohibition of individualized contact with jurors? Well, I think the reason is because. It could be potentially more disruptive to the truth-determining and functioning of the jury system. Well, the reason why Cox is distinguishable is because in this case we involved no such weighing of the right to public advocacy and the right to a fair trial. This is a prohibition requiring criminal sanctions which extends to virtually any communication anywhere to anyone who might have been even summonsed to a jury under the language of the statute. So we have the possibility that even a friend's comment to a prospective juror, having heard that they've been asked to come in for jury duty, even a friend's comment about how you don't have to listen to what the lawyers say, that kind of, that kind of comment can come within the criminal sanctions of the statute. It is not narrowly, a narrow prescription of activities such as what we encountered in Cox v. Louisiana. Do you agree with Judge Fletcher's comment that we have to look at the statute as limited by the State court? There's not the literal language of the statute, but the statute is construed to require, as I understand it, a communication with the intent to influence outcome in a case? Yes. But there isn't any further narrowing which would save the statute. For example, Judge Manheimer talks about how all attempts at communication, whether or not they're basically suiting salutary ends or corrupting ends are necessary going to be encompassed and potentially prohibited by the statute. And that, I think, is the greatest concern here. That even ones that are, even communications that are not content-specific with respect to the issues to be decided, this is true in Mr. Turney's case, nor containing a specific suggestion as to whether or not the defendant should be convicted or not convicted or what the results should be in a criminal case. Those are the — we don't have any kind of limitation here. We have basically even comments made by someone such as never trust anything a judge says or a defense lawyer says or why don't you ask the judge if you can do this or that. All of those attempts, even if they're well-intentioned, are necessarily punishable under the statute the way it is currently construed even by the Alaska Supreme Court. Obviously, it had concerns that it not reach that kind of conduct, but the construction that it placed on it didn't get there. I'm going to reserve the remainder of my time. Thank you. Thank you. Mr. Kossler, please proceed. May it please the Court. My name is Doug Kossler, and I'm here on behalf of the appellee, Margaret Pugh, as well as the State of Alaska. This case is interesting from the perspective that Mr. Turney is arguing against the very thing that was afforded to him, and that was a fair trial. He was given a fair trial on his jury tampering charges based on the evidence presented only in open court and based on the law that had been arrived at through  At that fair trial, he had the right to confront the witnesses against him, the right to cross-examine, and the right to counsel. At Mr. Turney's trial, no one was whispering, call this number so you can know what your rights are. No one was going after jurors who were wearing juror badges, trying to influence how they voted. And Mr. Turney can protest now, but he understands why there is no constitutional right to do what he did in this case or similar things. He understands why, in the words of the Supreme Court, we don't allow private talk with jurors. And how do we know this? Well, the reason we know this is because we're here in Seattle and not in Anchorage. This case was originally scheduled for oral argument up in Anchorage, but Judge Kleinfeld was on the panel, and Mr. Turney had had a private interaction with Judge Kleinfeld. And based on that private interaction, his counsel and Mr. Turney requested a new panel. Now, that private, and obviously they thought that that would affect the fairness of the proceeding. This seems to me a little, at least from my perspective, a little afield of the issues we have to address. You can spend your time, whatever you want, but I'm not really interested in why Judge Kleinfeld recused or whatever, or what happened. I just want to know what the issue is that we have to decide. Okay. Well, the point I was trying to make is that that interaction occurred years before the oral argument was scheduled. Here, we're talking about communications that are occurring while the trial is underway. And it's an extreme. What we're looking at, counsel, is whether this statute is overbroad. Right. That's all we want to hear about. Okay. Well, this is an extremely narrow band of communications we're talking about. Under the interpretation of Alaska Supreme Court, the defendant has to know that he's communicating with a juror. He has to know that he's doing it in a particular case. It has to be done in a particular case. And more importantly, he has to be specifically intending to influence the outcome of that case through that communication. Okay. Let me give you a hypothetical that I'll inspire by the appellant's argument. Sure. So let's say that Mr. Jones is empaneled on a criminal jury, criminal case jury, and Mr. Jones's next-door neighbor hears about this and says to him, I understand you're on the Smith trial criminal jury. I want to give you my advice. You don't have to follow the law. You can nullify the law if you want. That's an American tradition. So let's say that happens. Could the next-door neighbor be prosecuted under this statute? And if so, is there an appreciable amount of, should that be protected speech, or is it not protected? And if it isn't, if it is protected, is there an appreciable amount of it that remains subject to condemnation under the statute as construed? I guess I better give him one at a time. Yeah. Can I take the first question, please? Yeah. Can the next-door neighbor go to jail for that comment? Okay. For that particular comment, I do not believe he would be guilty of going or be subject to prosecution under the statute. And the reason is, if you read the Alaska Supreme Court's opinion, they talk about how it's critical that the defendant be, through his communication, seeking to influence the juror in a particular case. It's not just influence the juror generally. And it's to influence the outcome of that particular case. And they say misguided or erroneous suggestions. And what you've described is a misguided suggestion. If the next-door neighbor said, this prosecution isn't right, and whatever the law is, you should let the defendant go free. With respect to that particular case, yes. Then I believe that that would be subject to prosecution under the interpretation of the statute given by the Alaska Supreme Court. Now, as to your second question, dear? Well, it was like if there's, if in the, if something is proscribed by the statute. I was trying to find out if something was proscribed that should be protected by the First Amendment. Well, and I would submit that there isn't. If you are acting with these three elements,  You know you're talking to a juror and you want to influence the outcome of a particular case? Right. Those are the elements? Through the communication, you're specifically intending to influence the outcome of that particular case, yes. Then you say it doesn't have protection. Right. And I think one of the judges brought up the Cox case. And I don't read Cox in the same manner as the appellant has here. Cox, in Cox, we, the appellant indicated that that's more of a balancing or a time-placed manner restriction. But I think if you read Cox, they specifically say that that, the interest there, and the interest were, or the statute there was remarkably similar to what this court has in AS, the statute that's at issue in Alaska. And they say that even though the influence was accomplished through communication, it's not worthy of First Amendment interest. And they specifically compare the conduct at issue, they say, to fighting words, which, as we all know, is not protected by the First Amendment. So they're drawing that parallel, saying it's not protected by the First Amendment. And the appellant relies heavily on Judge Manheimer's dissenting opinion. After a higher court, the Alaska Supreme Court had already passed on the constitutionality of the statute. And if you look at that particular dissenting opinion, it doesn't, it only once mentions Cox, and then it's in a footnote. And it suffers from the same misapprehensions about what conduct is covered by the statute. It appears to believe, as the appellant does, that this statute covers any communications with respect to a juror. But that's not what the Alaska Supreme Court said. And if there aren't any other further questions. I don't know, Judge Fletcher, Judge King, we have no further questions. Thank you. Thank you. Ms. Geddes, you reserved some time. Yes, Your Honor. Your Honor, the hypothetical that you gave, the neighbor knowing their neighbor is a juror in a named case, suggests nullification as a valid exercise of his rights under the common law. That is really factually completely indistinguishable from what happened here. Because Frank Turney's suggestion to people that they call a number was essentially conveying the message that they had the right to vote their conscience as a juror, not saying you should find this fellow not guilty. And, in fact, the facts adduced to the case did never establish that he was telling people that Mr. Hall ought to be acquitted. Well, I thought that we don't really have that issue before us. The only issue we have is the overbreadth. Correct. But I guess I wanted to point out that the hypothetical is indistinguishable from the actual facts of this case. Is the fact that, let's assume that this statute was wrongly applied to your client, and does that prove overbreadth? That it was wrongly applied to him? Yes. Well, certainly, Mr. Turney thinks it was, because when you look at the jury trial instruction in the case, it doesn't reflect any of the limitations that the Supreme Court has placed on the constitutionality of the statute. But I recognize that there are limitations here placed upon this appeal to limit me strictly to the overbreadth issue. And the question is whether or not the various applications, even with the narrowing restrictions the Supreme Court has placed on it, do we still reach protected speech? And I think the answer is just simply yes on Mr. Turney's part. I'm not sure I responded to your question, Judge Fletcher. It was a difficult question. Thank you. I don't have anything to add unless there are any further questions. Thank you very much. Very challenging case. Thank you. We appreciate the excellent argument on both sides. Thank you. So, Turney v. Pugh will be submitted.
judges: B. Fletcher, Gould, King